**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VELMA M. HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Nos.  4:19-CV-345 RLW |
| | ) | 4:19-CV-1315 RLW |
| LOUIS DEJOY, | ) | |
| Postmaster General, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM AND ORDER**</u>

Pending before the Court is Defendant Louis DeJoy's Motion for Summary Judgment in this consolidated matter. Plaintiff Velma M. Hill, who is proceeding <u>pro se</u>, responded to the motion, to which Defendant filed a reply.   The motion, therefore, is ripe for review.   For the reasons that follow, the Court grants Defendant's Motion for Summary Judgment and dismisses Plaintiff's claims against it.[1]

## I.    Background

The above-captioned matter is a consolidation of two cases Plaintiff is bringing against the United States Postal Service ("USPS"), Case Nos. 4:19-CV-345 RLW and 4:19-CV-1315 RLW. Plaintiff, a sixty-year-old African American woman, began working for USPS as a mail carrier in May 1998.   Sometime in 2006, Plaintiff became a Supervisor of Customer Services.   As a supervisor, Plaintiff's duties included employee management, attendance, answering phones, and

---

[1] Also pending before the Court is Plaintiff's Motion to Correct Record Concerning Summary Judgment.   Plaintiff seeks leave to add exhibits that she did not file with her memorandum in opposition to summary judgment. Plaintiff, however, did not attach the exhibits to her motion for the Court's review and filing.   Plaintiff's motion, therefore, is denied. Furthermore, there is nothing in Plaintiff motion to suggest Plaintiff's exhibits would change the Court's ruling on summary judgment.

doing reports and pivot sheets. She would also run the workroom floor, which included determining clerk workload and route coverage based on incoming mail. Plaintiff remained Supervisor of Customer Services until her disability retirement in 2019.

The claims in Case No. 4:19-CV-345 are based on alleged conduct occurring between December 2012 through December 2013, while Plaintiff was employed at the Chouteau station. Plaintiff's claims in Case No. 4:19-CV-1315 are based on alleged conduct occurring between October 2015 through February 2016, while Plaintiff was employed at the Gaffney station.

### A.    EEO Complaints Regarding the Chouteau Station - EECO Complaints Nos. 4J-630-054-13 and 4J-631-025-14

On March 18, 2013, Plaintiff filed an EEO Complaint, number 4J-630-0054-13 ("EEO 0054-13"). In this Complaint, Plaintiff alleged three bases for discrimination: sex (female), race (Black), and retaliation for prior EEO activity. Plaintiff did not check the box for disability discrimination. Plaintiff named Michael Beutel and Karen Boyd as the persons responsible for the discrimination. She alleged the following two discriminatory acts: (1) on December 17, 2012, Mr. Beutel made a rude statement to her in the presence of another white male; and (2) On December 17, 2012, her FMLA leave was removed from the system and changed to Absence without Leave (AWOL).

On June 30, 2013, Plaintiff amended EEO 0054-13 to add the following two additional claims based on race, disability, and retaliation: (1) on June 3, 2013, Mr. Beutel told Plaintiff she was "the property of Maryville Gardens," and (2) on an unspecified date Mr. Beutel told Plaintiff there was no work available and did not pay her.

On August 18, 2013, Plaintiff again amended EEO 0054-13. She raised a new claim based on physical disability (work restriction) and retaliation (prior EEO activity). Plaintiff alleged that

on August 13, 2013, Mr. Beutel tried to create a reason to discipline her about her job performance, because she was not completing certain tasks.

On March 4, 2014, Plaintiff filed a second EEO Complaint, number 4J-630-0025-14 ("EEO 0025-14"). In this EEO Complaint, Plaintiff alleged two bases for discrimination:  disability and retaliation for prior EEO activity.  Plaintiff named Mike Huning and Carolyn Johnson as the persons responsible for the discrimination.  Plaintiff alleged the following four discriminatory acts: (1) Ms. Johnson created a hostile work environment by threatening her with discipline, disrespecting her on the workroom floor, and telling Plaintiff that she was on no use to her; (2) Mr. Huning told Plaintiff that there was no work for her if she could only work four hours; (3) another supervisor was given a choice vacation time over her; and (4) Plaintiff was unfairly disciplined for her attendance.

On April 4, 2014, Plaintiff amended EEO 0025-14 to add the following two new claims based on harassment, retaliation, disability, and age discrimination: (1) on March 28, 2014, she was charged AWOL; and (2) when her Office of Workers' Compensation Programs ("OWCP") paperwork was incorrectly processed.

The National Equal Employment Opportunity Investigative Services Office ("Agency") consolidated EEO 0054-13 and EEO 0025-14 and recognized the following operative claims:

- Discrimination Based on Color (Black), Sex (Female), and Retaliation (Protected Activity):

  (1)  On or about December 18, 2012, Plaintiff's FMLA sick leave request was removed from the system, and she was charged AWOL before the allotted time to submit documentation.

- Discrimination Based on Race (Black), Disability (Chronic Neck Pain and Major Depression), and Retaliation (Prior EEO Activity and Instant Complaint):

       (2)     On an unspecified date, Mr. Beutel told Plaintiff that there was no work available for her and, as such, did not pay her for her requested leave.

- Discrimination Based on Retaliation (Prior and Current EEO Activity) and Hostile Work Environment:

       (3)     On or about November 18, 2013, Ms. Johnson issued Plaintiff a Letter of Warning for failure to maintain a regular work schedule.

       (4)     On unspecified dates, Mr. Johnson told Plaintiff that she was of no use to her and that she was sent to the station to get rid of Plaintiff.

       (5)     On an unspecified date, Sylvester Jones, a co-worker, was given a choice vacation time before Plaintiff.

       (6)     On an unspecified date, Mr. Huning told Plaintiff that as long as she could only work four hours there was no work available for her.

- Discriminatory Harassment Based on Retaliation (Prior and Current EEO Activity), Age (50+), Physical Disability (Unspecified) and Mental Disability (Unspecified):

       (7)     On March 28, 2014, Ms. Johnson and Mr. Huning charged Hill with AWOL.

Other claims were dismissed for failure to state a claim pursuant to 29 C.F.R. §1614.107(a)(1).

All of the claims in EEO 0054-13 and EEO 0025-14 relate to the time Plaintiff worked at the Chouteau station.

On October 19, 2015, the Agency issued its Final Agency Decision (FAD) for EEO 0054-13 and EEO 0025-14. (4:19-CV-345, ECF No. 53, Ex. 15). It found that its prior decisions dismissing some of Plaintiff's charges for failure to state a claim were proper. It further determined Plaintiff's evidence did not support a finding that she was subject to discrimination or a hostile work environment. Plaintiff filed an appeal with the Office of Federal Operations (OFO) on November 10, 2015. The OFO reviewed Plaintiff's claims, including the hostile work environment claims related to statements made by Mr. Beutel, which had previously been dismissed, and affirmed the FAD on March 30, 2018. (4:19-CV-345, ECF No. 53, Ex. 16).

Plaintiff made a request for reconsideration, which was denied.   (4:19-CV-345, ECF No. 1, Ex. 1).

**B.    EEO Complaint Regarding the Gaffney Station - EECO Complaint No. 4J-630-0048-16**

On May 19, 2016, Plaintiff filed an EEO Complaint, number 4J-630-048-13 ("EEO 0048-16"). All of the allegations in this EEO Complaint relate to the time Plaintiff was employed at the Gaffney station.   Plaintiff alleged four bases for discrimination in EEO 0048-16: age, retaliation for prior EEO activity, and disability.   Plaintiff named Carla Clary and Karla Rose as the persons responsible for the discrimination.   She alleged the following six discriminatory acts: (1) Ms. Clary told Plaintiff that she did not want Plaintiff at the Gaffney station and she was going to get rid of her; (2) Ms. Clary mistreated Plaintiff in the presence of other employees and constantly harassed her; (3) Ms. Clary's mistreatment and harassment were due to Plaintiff's work restrictions, her other EEO actions, and the fact she was nearing retirement age; (4) Ms. Clary told numerous people "fake information" about Plaintiff to defame her; (5) Ms. Clary was constantly harassing Plaintiff about information on her doctor visits when she had already provided it to the nurse; and (6) Ms. Clary was constantly threatening Plaintiff with fabricated Pre-Disciplinary Interviews (PDI).

The Agency accepted the following charges as a part of EEO 0048-16:

- Discriminatory Harassment Based on Age (DOB: 1960), Disability (OWCP Accepted Conditions for Neck and Shoulder Pain and Stress and Depression), and Retaliation (Prior EEO Activity):

    (1)   Prior to November 2015, Ms. Clary told Plaintiff she did not want her at Gaffney,
    (2)   In October/November 2015 and February 2016, Ms. Clary defamed Plaintiff's character by telling people false information about her.

(3)   On an unknown date and on December 29, 2015, Ms. Clary abused Plaintiff on the workroom floor.
(4)   Between October 2015 and February 2016, Ms. Clary harassed Plaintiff about her doctor appointments.
(5)   On December 29, 2015, Ms. Clary told Plaintiff to hold her lunch and that she did not get to take a break.
(6)   On February 9, 2016, Plaintiff was given a PDI for going to her car.
(7)   On January 25, 2016, Plaintiff was given a fourteen-day suspension.

The Agency issued its FAD as to EEO 0048-16 on November 29, 2016, concluding that the evidence did not support a finding that Plaintiff had been subjected to harassment or discrimination. (4:19-CV-345, ECF No. 53, Ex. 27).   Plaintiff appealed the FAD to the OFO. On February 21, 2019, the OFO affirmed the Agency's based on preponderance of the evidence. (4:19-CV-345, ECF No. 53, Ex. 45).

### C.    Plaintiff's Complaints Before This Court

On February 27, 2019, filed a pro se suit against USPS in Case No. 4:19-CV-345, using the Court's form Employment Discrimination Complaint, which was verified and signed under penalty of perjury. Plaintiff alleges claims against USPS under Title VII of the Civil Rights Act 42 U.S.C. §§ 2000e, et seq., ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. §§621, et seq., ("ADEA"); the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq., ("ADA"); and the Rehabilitation Act, 29 U.S.C. §§ 701, et seq.   The claims in Case No. 4:19-CV-345 RLW are based on alleged conduct occurring between December 2012 through December 2013, while Plaintiff was employed at the Chouteau station.

Plaintiff asserts the following seven claims in Case No. 4:19-CV-345 RLW: (1) Manager Beutel had Plaintiff's Family Medical Leave Act ("FMLA") leave removed from the system and changed to AWOL before the allotted time to submit documentation; (2) Manager Beutel stated

6

plaintiff was "full of shit" and falsely told a manner that he had apologized for his comment; (3) in response to Plaintiff's question as to when she was to report to work, Manager Beutel made the statement, "I don't know. You are the property of Maryville Gardens."; (4) due to Plaintiff's work restrictions, Manager Beutel told Plaintiff there was no available work, while at the same time he allowed a "craft employee" to work Plaintiff's "form 50 position" during the scheduled hours she had been working. Relying on Manager Beutel statement, Plaintiff requested leave and was not paid for her leave time; (5) acting manager Carolyn Johnson issued Plaintiff a warning letter for failure to maintain a regular work schedule; (6) acting manager Carolyn Johnson told Plaintiff, in the presence of co-workers, that Plaintiff "was of no use to her," and that she was sent to the station to get rid of Plaintiff; and (7) Manager Huning informed Plaintiff that she was not to report back to work until her doctor released her to work eight hours a day. Manager Huning represented that there were no four-hour-a-day supervisor positions, although other supervisors had been allowed to work four hours a day when they had non-job-related work restrictions. (4:19-CV-345, ECF No. 1 at 6).   Plaintiff attached to her Complaint a right-to-sue letter, but not her EEO charges. Plaintiff is seeking compensatory damages.

On May 15, 2019, Plaintiff filed second pro se lawsuit against USPS in Case No. 4:19-CV-1315. Plaintiff again used the Court's form Employment Discrimination Complaint, which was verified and signed under penalty of perjury.   In her second Complaint, Plaintiff asserts claims under the ADEA, ADA, and Rehabilitation Act. Plaintiff's claims in Case No. 4:19-CV 1315-RLW are based on alleged conduct occurring between October 2015 through February 2016, while Plaintiff was employed at the Gaffney station.   Plaintiff asserts the following six claims in Case No. 4:19-CV-1315: (1) Manager Clary retaliated against Plaintiff because of prior EEO activity;

(2) Manager Clary made statements to her superiors and employees that Plaintiff was "dumped on her," and that she did not want Plaintiff at her station. She also sent emails to her superiors that Plaintiff was "their problem"; (3) Manager Clary violated the ADA when she instructed Plaintiff not to take a break, although Plaintiff's work restrictions required a 10-15 minute break; (4) Manager Clary harassed Plaintiff on a daily basis and threatened to do whatever she needed to do to get Plaintiff out of her station, "which resulted in her abusing her management position to falsify, manipulate and create circumstances to charge [Plaintiff with] something"; (5) Manager Clary treated Plaintiff differently from co-workers in that they were able to take breaks and Plaintiff had to clock in and out; she also changed Plaintiff's "nonschedule day" to accommodate others; (6) Manager Clary referred to Plaintiff as "crazy ass"; and (7) Manager Clary yelled at Plaintiff on the workroom floor, abused her authority, and brought false charges against Plaintiff. (4:19-CV-1315, ECF No. 1 at 5-6).   Again, Plaintiff attached a right-to-sue letter, but not her EEO charge. For relief, Plaintiff seeks compensatory damages.

Defendant moves for summary judgment as to all of Plaintiff's claims in both cases. The issues having been fully briefed, the matter is now ready for review.

## II.   Summary Judgment Standard

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Ia. v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact, see Crossley v. Georgia-Pac. Corp., 355 F.3d 1112, 1114 (8th Cir. 2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005).

### III. Facts

In support of its motion for summary judgment, Defendant submitted a statement of uncontroverted material facts.   Plaintiff responded to some but not all of the facts in Defendant's statement of uncontroverted material facts.   Further, Plaintiff did not provide the Court with a statement of material facts as to which she contends a genuine dispute exists.   Accordingly, Plaintiff has not met the requirements of Local Rule 4.01(E), and she is deemed to have admitted the facts in Defendant's statement of uncontroverted material facts to which she did not file a response.[2]   Deichmann v. Boeing Co., 36 F.Supp.2d 1166, 1168 (E.D. Mo. 1999), aff'd, 232 F.3d 907 (8th Cir. 2000). Cf. Northwest Bank & Trust Co. v. First Ill. Nat'l Bank, 354 F.3d 721, 725 (8th Cir. 2003) (district court did not abuse its discretion by applying local rules that excluded some of the material facts offered in opposition to a motion for summary judgment).

As a preliminary matter, in each of her lawsuits Plaintiff filed a seven-page complaint.   In moving for summary judgment, Defendant filed, with leave of the Court, a 56-page memorandum

---

[2]Local Rule 4.01(E) provides, with respect to summary judgment motions:

A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E).

in support of summary judgment, a 105-page statement of uncontroverted material facts, and over 1400 pages of exhibits. In response, Plaintiff filed a 16-page memorandum in opposition to summary judgment, and she responded to some of the facts in the statement of uncontroverted material facts. Defendant then filed a 25-page reply memorandum and a 372-page Reply to Plaintiff's Response to Defendant's Statement of Material Facts.[3] The Court declines to summarize the overly long statement of uncontroverted material facts, and instead will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## IV.    Discussion

At the outset, for unknown reasons, Defendant raised a number of factual and legal issues *that were not alleged in Plaintiff's complaints*. In moving for summary judgment, Defendant addressed all of the claims Plaintiff raised in her EEO complaints, even though she did not allege all of these claims in the two complaints filed in this Court. It is a basic principle that a dispositive

---

[3]Defendant initially sought leave to file a 56-page reply memorandum in support of its motion for summary judgment. The Court denied Defendant's motion for leave and allowed Defendant to file a 25-page reply memorandum. The memorandum Defendant filed was 25 pages long, but it contained 50 single-spaced footnotes, some of which comprised more than half of a written page. While this filing may have complied with the letter of the Court's order, it violates the spirit and intent of the order and borders on contumacious conduct. All of the filings Defendant made in support of its motion for summary judgment were considerably overlength and, as stated above, addressed issues not raised in Plaintiff's complaints. The Court finds defense counsel's conduct borders on an abuse of the judicial process, in that defense counsel unreasonably placed an undue burden on the Court and Plaintiff. See 28 U.S.C. § 1927 ("Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct); Chambers v. NASCO, Inc., 501 U.S. 32, 44–45 (1991) (court may also impose sanctions pursuant to its inherent authority to punish "conduct which abuses the judicial process."); Braley v. Campbell, 832 F.2d 1504, 1509 (10th Cir. 1987) (finding counsel's conduct vexatious because briefing obfuscated the legal issues and needlessly complicated the court's task of sorting them out); Olympia Co. v. Celotex Corp., 771 F.2d 888, 893 (5th Cir. 1985) (counsel sanctioned for submitting rambling briefs, making no attempt to address elements requisite to obtaining reversal).

motion should address only the claims actually raised in a complaint.   To the extent Defendant's summary judgment motion addresses claims that were not raised in the complaints, the Court does not address these as they are surplusage.   In the future, Defendant must restrict its filings to claims actually raised in the action.

In filing her response, Plaintiff addressed some of the legal arguments Defendant made on summary judgment, but not all.   To the extent Defendant moved for summary judgment on claims Plaintiff raised in her complaints but did not oppose on summary judgment, the claims and arguments are waived.   City of Kennett, Missouri v. Env't Prot. Agency, 887 F.3d 424, 430 (8th Cir. 2018) (plaintiff's claim waived where it did not respond to defendant's arguments for summary judgment on that claim); Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees, 558 F.3d 731, 735 (8th Cir. 2009) ("failure to oppose a basis for summary judgment constitutes waiver of that argument").   The Court will grant summary judgment to Defendant on the waived claims.

A.      Claims in Case No. 4:19-CV-345

1.      Claim One

In Claim One of the Complaint in Case No. 4:19-CV-345, Plaintiff alleges her manager, Mr. Beutel, had her FMLA leave removed from the system and changed to AWOL before the allotted time to submit documentation had expired.   It is undisputed that on December 19, 2012, Plaintiff requested FMLA via the internet.   (4:19-CV-345, ECF No. 62 at 12).   Plaintiff testified she thought her requested leave began on December 18, 2012, but she could not recall the end date.   (Id. at 12-13).   Plaintiff admitted that an employee needs to provide medical documentation when requesting FMLA leave.   She claims she had "about two weeks" to do so based on "common practice", but she could not remember if this policy was in writing.   (Id. at 14).

12

Plaintiff claims she sent her medical documents to Virginia Price-Booker, her NAPS representative, on January 7, 2013, via email.  (Id. at 15).   Plaintiff also told Mr. Beutel she was going to send her medical documents to the Health Resources Unit at the main post office, which she claims she did.  (Id.)

It is undisputed Mr. Beutel marked Plaintiff AWOL from December 18, 2012 to March 8, 2013, because Plaintiff was not in compliance with USPS policies and procedures in that Plaintiff had not provided the required medical documentation for FMLA leave. (Id. at 38). Plaintiff asserts, however, that she was marked AWOL the day after she requested FMLA leave.   For purposes of summary judgment, the Court assumes this is true.   It is undisputed that Plaintiff was not disciplined as a result of the AWOL designation, and she was paid for the leave she requested.[4] (Id. at 17).

It is unclear from the Complaint under what statutory authority Plaintiff is bringing this claim.   It does not appear Plaintiff is bringing Claim One as a direct claim under the FMLA, but rather it would seem Plaintiff is alleging that she was unlawfully discriminated against on the basis of some protected class when she was marked AWOL before the deadline to submit documentation had passed.   Yet it is unclear what type of discrimination Plaintiff is alleging in Claim One.   On page five of her Complaint, Plaintiff checked boxes indicating that she believed she was discriminated against based on her race, disability, and age, but she does not specify which of these

---

[4]Plaintiff states in her memorandum in opposition that Mr. Beutel's "actions were to be punitive and cause harm to me by creating a financial hardship by not paying me." (4:19-CV-345, ECF No. 61 at 3). Arguments and assertions made in briefs are not evidence. Stringer v. St. James R-1 Sch. Dist., 446 F.3d 799, 804 (8th Cir. 2006). Plaintiff admits in her response to the Statement of Uncontroverted Material Facts that she was paid for the leave.  (4:19-CV-345, ECF No. 62 at 17, ¶74).

grounds apply to which of her claims, and Plaintiff failed to clarify the grounds upon which this claim is based in her memorandum opposing summary judgment. Claim One fails to state a claim on this basis.

Even assuming Plaintiff is claiming in Claim One that she was discriminated against based on her race, disability, age and/or EEO activity, Plaintiff fails to establish a claim of unlawful discrimination. "To survive a motion for summary judgment on a discrimination claim, a plaintiff must present admissible evidence directly indicating unlawful discrimination, or create an inference of unlawful discrimination under the burden-shifting framework established in McDonnell Douglas."   Rooney v. Rock-Tenn Converting Co., 878 F.3d 1111, 1115–16 (8th Cir. 2018) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).   With regard to Claim One, Plaintiff acknowledges no one said anything derogatory about her race, age, disability or prior EEO activity when she was marked AWOL.   In other words, she has no direct evidence of unlawful discrimination.   Therefore, the issue becomes one of indirect evidence. Plaintiff must establish an inference of unlawful discrimination.

To establish an inference of unlawful discrimination, there are three steps: (1) the plaintiff must establish the prima facie case for discrimination; (2) the burden of production then shifts to the employer to show a legitimate, non-discriminatory reason for its decision; and, if the employer produces such evidence; (3) the burden of production shifts back to the plaintiff to show the proffered reason was mere pretext for intentional discrimination. See McDonnell Douglas, 411 U.S. at 802–05; see also Edwards v. Hiland Roberts Dairy, Co., 860 F.3d 1121, 1125–26 (8th Cir. 2017).   A prima facie case of discrimination requires Plaintiff to show: (1) she is a member of a protected class; (2) she was meeting the legitimate expectations of the employer; (3) she suffered

14

an adverse employment action; and (4) suffered under circumstances permitting an inference of discrimination. Schaffhauser v. United Parcel Serv., Inc., 794 F.3d 899, 903 (8th Cir. 2015) (citing Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 681 (8th Cir. 2012)).

Plaintiff has not established a prima facie case for discrimination in Claim One.  Even assuming Plaintiff has evidence establishing the three other elements, there is no evidence Plaintiff suffered an adverse employment action. Plaintiff admits that although she was marked AWOL, she was not disciplined, and she received pay for the days she was absent.   Under Eighth Circuit law,

> An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. This might include termination, cuts in pay or future career prospects. [Plaintiff] need not prove that [s]he was terminated to demonstrate an adverse action; however not everything that makes an employee unhappy is an actionable adverse action. Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action.

Wagner v. Campbell, 779 F.3d 761, 766 (8th Cir. 2015) (internal quotation marks and citations omitted). Here, Plaintiff admitted she did not experience any change in her job duties or pay, and she was not disciplined.   The Court grants Defendant's motion for summary judgment as to Claim One in Case No. 4:19-CV-345.

**2.     Claim Two**

In Claim Two of the Complaint in Case No. 4:19-CV-345, Plaintiff alleges Mr. Beutel, her manager at the Chouteau station, stated Plaintiff was "full of shit," and falsely told another manager that he had apologized for his comment. Plaintiff alleges the comment created a hostile and stressful working environment.

15

It is undisputed that on December 17, 2012, Mr. Beutel met with Plaintiff and Tom Schreiber, a union shop steward.   (4:19-CV-345, ECF No. 62 at 11). After listening to both Plaintiff and Mr. Schreiber, Mr. Beutel told Plaintiff she was "full of shit."   (Id.)   Plaintiff found Mr. Beutel's statement to be rude, insulting, hurtful, and discrediting, however, she admitted that Mr. Beutel did not say anything derogatory about her race, age, disability or prior EEO activity during the conversation. (Id.)   After Mr. Beutel made his "full of shit" comment, Plaintiff did not finish her workday.   She had about four hours left in her scheduled day but could not recall if she submitted a leave slip for those remaining hours. (Id.) Plaintiff does not remember if she was paid for the hours she missed on December 17, however, she admitted that Mr. Beutel's statement had no immediate effect on her pay, no effect on her benefits, and she was not disciplined. (Id.)

As with Claim One, it is not evident from the Complaint what type of discrimination Plaintiff is alleging or under what statutory authority Plaintiff is bringing Claim Two. Furthermore, Plaintiff did not clarify the grounds for Claim Two in her memorandum opposing summary judgment.   Claim Two fails to state a claim on this basis.

Even assuming Plaintiff is claiming in Claim Two that she was subject to a hostile work environment based on race, disability, age and/or EEO activity, the claim fails on the merits.   To establish a prima facie hostile work environment claim for supervisor harassment, Plaintiff must prove: 1) that she was a member of a protected class; 2) the occurrence of unwelcome harassment; 3) a causal nexus existed between the harassment and her membership in the protected class; and 4) the harassment affected a term, condition, or privilege of employment. Jenkins v. Winter, 540 F.3d 742, 749–50 (8th Cir. 2008). "A hostile environment exists when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter

16

the conditions of the victim's employment and create an abusive working environment.'" Palesch v. Missouri Comm'n on Hum. Rts., 233 F.3d 560, 566 (8th Cir. 2000) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

First, there is no evidence of a causal connection between the comment and Plaintiff's membership in a protected group.   The comment is not directed to Plaintiff's age, race, disability, or EEO activity, and Plaintiff fails to establish Mr. Beutel was motivated by discriminatory animus when he made the statement.   See Palesch, 233 F.3d at 567–68 ("[Plaintiff] offers little more than speculation and conjecture to make the required connection from the mistreatment she alleges to a gender or race-based animus. [Plaintiff] has failed to create a material issue of fact concerning whether she was subjected to workplace harassment because of either her race or gender.").

Second, while the comment was harsh and rude, it hardly rises to the level of actionable harassment in that it was not severe enough to affect the terms, conditions, or privileges of Plaintiff's employment. Moses v. Dassault Falcon Jet-Wilmington Corp, 894 F.3d 911, 923 (8th Cir. 2018).   See also Cross v. Prairie Meadows Racetrack & Casino, Inc., 615 F.3d 977, 981 (8th Cir. 2010) ("The standard for demonstrating a hostile work environment . . .   is a demanding one. [Anti-discrimination laws] do[ ] not prohibit all verbal or physical harassment and [they are] not a general civility code for the American workplace.") (quotations and citations omitted).   As the Eighth Circuit has explained:

> The stringent hostile work environment standard is designed to filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language ... and occasional teasing. [M]erely rude or unpleasant conduct are insufficient to affect the terms and conditions of employment. The plaintiff must show that the alleged harassment was so intimidating, offensive, or hostile that it poisoned the work environment. [S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.

17

Moses, 894 F.3d at 922–23 (internal quotation marks and citations omitted). See also Al-Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1038 (8th Cir. 2005) (affirming summary judgment of harassment claim based on offensive utterances).   Mr. Beutel's comment was rude and unprofessional, but it is not actionable as a harassment claim.   Defendant is entitled to summary judgment as to Plaintiff's claim of harassment in Claim Two in Case No. 4:19-CV-345.

### 3.    Claim Three

In Claim Three of the Complaint in Case No. 4:19-CV-345, Plaintiff alleges that in response to Plaintiff's question as to when she should report to work, Mr. Beutel made the statement, "I don't know. You are the property of Maryville Gardens." It is undisputed that Mr. Beutel made the comment on June 3, 2013. (4:31-CV-345, ECF No. 62 at 18).   For context, Plaintiff was sent to the Maryville Gardens station in May 2013 to cover another employee's vacation time. When the temporary assignment was complete, Plaintiff inquired when she should report to work at Chouteau, and in response Mr. Beutel made the statement that she was "the property of Maryville Gardens."   (Id.)   Plaintiff considered this statement to be racist and degrading based on the history of African American slavery.   Plaintiff never asked Mr. Beutel what he meant in making the statement, and there is no evidence he made other allegedly racist or derogatory statements.   (Id.)

As stated above, hostile work environment claims require a high evidentiary showing that the plaintiff's workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris, 510 U.S. at 21. See also Nitsche v. CEO of Osage Valley Elec. Co-op., 446 F.3d 841, 846 (8th Cir. 2006) (requiring hostile work environment plaintiff to

18

"clear a high threshold to demonstrate actionable harm"); <u>Powell v. Yellow Book USA, Inc.</u>, 445 F.3d 1074, 1078 (8th Cir. 2006) (holding that "Title VII's purpose is not to smooth the rough edges of our daily discourse, nor to provide a federal cause of action for every slight").

First, the comment that forms the basis of Claim Three is ambiguous and could be interpreted more than one way. Second, even if the Court were to find the comment had racial undertones, one comment is not "sufficiently severe or pervasive" to alter the conditions of Plaintiff's employment and "create an abusive working environment.'" <u>Harris</u>, 510 U.S. at 21 <u>quoting</u> <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 67 (1986). <u>See</u> <u>also</u> <u>Moses</u>, 894 F.3d at 922–23; <u>Al-Zubaidy</u>, 406 F.3d at 1038.   Finally, the Court evaluated the two comments in Claims Two and Three together as one claim and finds they do not rise to the level of actionable harassment. The comments lack discriminatory animus and were made almost six months apart. <u>Harris</u>, 510 U.S. at 21; <u>Moses</u>, 894 F.3d at 922–23; <u>Al-Zubaidy</u>, 406 F.3d at 1038.

The Court grants Defendant's motion for summary judgment as to Claim Three in Case No. 4:19-CV-345.   Plaintiff fails to establish a claim of unlawful harassment based on Mr. Beutel's statements.

### 4.    Claim Four

In Claim Four of her first Complaint, Plaintiff alleges that due to her "work restrictions," Mr. Beutel told her there was no available work, while at the same time he allowed a "craft" employee to work Plaintiff's "form 50 position" during the scheduled hours she had been working. (4:19-CV-345, ECF No. 1 at 6).   Plaintiff alleges she relied on Mr. Beutel's statement and requested leave but was not paid for her leave time. (<u>Id.</u>)

When Plaintiff began working at the Chouteau station, Plaintiff worked approximately eight hours a day from 4:30-5:30 a.m. to about 1:00 p.m. (4:19-CV-345, ECF No. 62 at 10).   In the spring of 2013, Plaintiff was on leave and then temporary assignment at the Maryville Gardens station.   She attempted to return to work at the Chouteau station in early June 2013 with a four-hour work restriction.   (Id. at 19).

According to Mr. Beutel, the Chouteau station needed three full-time supervisors to operate – an opening supervisor, an evening supervisor, and himself. If Plaintiff was unable to complete a full eight-hour shift, either the evening supervisor or Mr. Beutel would have to complete the other four hours of work. (Id. at 36). Mr. Beutel was not able to add another supervisor to cover Plaintiff's work on his own, but rather he would have to go to headquarters to seek upper management approval based on a number of complex factors.   Due to workflow issues, Mr. Beutel believed it would be better for Plaintiff to return as evening supervisor, as he already had another employee working as opening supervisor. Plaintiff, however, told Mr. Beutel that she was unable to work the later shift due to her medications. (Id.)   Plaintiff was sent home and was on leave from about June 1 to July 5, 2013.   Plaintiff was paid during this time. (Id.)

Mr. Beutel referred Plaintiff to the District Reasonable Accommodation Committee ("DRAC") in June 2013.   (Id. at 27).   On June 24, 2013, Plaintiff was asked to provide information from her doctor about her current medical condition.   (Id.)   Plaintiff was also asked to provide an assessment of the expected duration of her restrictions.   At some point in time, Plaintiff provided six letters from her medical providers dating from January 2, 2013, through June 3, 2013. (Id. at 28-29).   The most recent letter, which was dated June 3, 2013, stated Plaintiff

could return to work on June 4, 2013, between the hours of 5:00 a.m. to 2:00 p.m. for only a four-hour shift.   (Id. at 29)

On July 6 or 7, 2013, Plaintiff returned to the Chouteau station, where she worked through December 3, 2013.   During this time, Plaintiff worked four hours a day from 6:00 a.m. to 10:00 a.m.   Plaintiff worked four-hour shifts but was paid for eight hours. (Id. at 22).

Throughout the summer and fall of 2013, the DRAC continued to request documentation regarding the expected duration of her restrictions, which Plaintiff never provided. (Id.)   The DRAC denied Plaintiff request for a reasonable accommodation on December 27, 2013, based, in part, on the fact that Plaintiff failed to provide the needed documentation to evaluate the request. Plaintiff did not appeal the DRAC decision.   (Id.)

It is not entirely clear from the Complaint or record what is the basis for Claim Four.   To the extent Plaintiff is attempting to assert a failure to accommodate claim under the Rehabilitation Act, the claim is without merit because Plaintiff failed to exhaust this claim.

Under the Rehabilitation Act, which is applicable to federal employees, "'[a]n employer commits unlawful discrimination . . . if the employer does not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer].'" Ballard v. Rubin, 284 F.3d 957, 960 (8th Cir. 2002) (quoting Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 951 (8th Cir. 1999)). As the Eighth Circuit has observed, "where the employee truly and affirmatively requested accommodation, that the scope of the employer's obligation in this regard is determined through an informal, interactive process between the employer and the employee,

identifying the limitations arising from the disability and potential reasonable accommodations that could overcome those limitations." Id. (quotations omitted).   In order to establish that the employer did not participate in this interactive process, the employee must show: "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." Id. (quotations omitted).   Under the Rehabilitation Act and its regulations, "discrimination occurs if 'a covered entity [does] not [ ] make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business.'"   Peebles v. Potter, 354 F.3d 761, 766 (8th Cir. 2004) (quoting 29 C.F.R. 1630.9(a) (2003)).

Setting aside the issue of whether Plaintiff is a qualified individual with a disability under the Rehabilitation Act, Plaintiff failed to exhaust her administrative remedies with regard to this claim.[5]   Exhaustion is required to bring a disability claim under the Rehabilitation Act.   Morgan v. U.S. Postal Serv., 798 F.2d 1162, 1165 (8th Cir. 1986) ("An exhaustion requirement for claims of [disability] discrimination in employment against the federal government is reasonable from a

_____

[5]In her Complaint, Plaintiff indicates that she was discriminated against based on her disability, but she does not state what her disability is.   In addressing summary judgment, the parties filed hundreds of pages of facts, and yet neither side has clearly articulated what Plaintiff's impairments actually are or were.   The FAD dated October 19, 2015, neck pain and depression, (4:19-CV-345, ECF No. 53, Ex. 15 at 2), while the FAD dated November 29, 2016, states Plaintiff has claimed she is disabled based on neck and shoulder pain, stress, and depression.   (4:19-CV-345, ECF No. 53, Ex. 27 at 12).   Because the parties do not dispute that Plaintiff is disabled, for purposes of summary judgment, the Court assumes Plaintiff is a qualified individual with a disability under the Rehabilitation Act.

practical viewpoint."). Failure to exhaust administrative remedies forecloses the right to a decision on the merits.   McAlister v. Sec'y of Dep't of Health & Hum. Servs., 900 F.2d 157, 158 (8th Cir. 1990).    It is undisputed that Plaintiff failed to appeal the DRAC's decision, and any Rehabilitation Act failure to accommodate claim fails as a matter of law.

Based on the parties' briefs, it would appear Plaintiff is also attempting to claim in Claim Four that she was unlawfully discriminated against on the basis of some protected class when Mr. Beutel told Plaintiff that she could not work the early shift or for four hours a day.   Setting aside that is not clear from the record the basis of the alleged discrimination – whether is it is based on race, disability, age, or prior EEO activity – any such claim fails as a matter of law, because there is no evidence in the record Plaintiff suffered an adverse employment action, and Defendant has established a legitimate non-discriminatory reason for Mr. Beutel's actions.

First, there is no direct evidence of lawful discrimination, therefore, Plaintiff must create an inference of unlawful discrimination under the McDonnell Douglas burden-shifting framework. Rooney, 878 F.3d at 1115-16. Plaintiff cannot establish a prima facie case, because there is no evidence she suffered an adverse employment action.   When Plaintiff attempted to return to work, Mr. Beutel told her there was no early four-hour shift available, and she was placed on paid leave for approximately 30 days.   Thereafter, Plaintiff was allowed to return, working an early four-hour shift.   There is no evidence Plaintiff suffered a material employment disadvantage.   Plaintiff was on short paid leave.   She was not discharged, she continued to receive pay, and her future career prospects were not disadvantaged.   Wagner, 779 F.3d at 766.

Second, even if the Court were to find Plaintiff had established a prima facie case, Defendant has stated a legitimate non-discriminatory reason for Mr. Beutel's conduct.   Upon

learning Plaintiff intended to return to the Chouteau station, Mr. Beutel let Plaintiff know she was scheduled to work as evening supervisor.   But Plaintiff indicated that she could only work four hours in the morning due to her medical restrictions. Mr. Beutel, however, already had an opening supervisor for the morning shift and, thus, he did not have any work available that could accommodate Plaintiff's medical restrictions. Mr. Beutel testified the Chouteau station did not require two opening supervisors, and he told Plaintiff that there was no available work.   It is undisputed that in offering Plaintiff the evening shift, Mr. Beutel was trying to offset the impact that her four-hour restrictions had on operations at Chouteau. Mr. Beutel could not add another supervisor to cover for Plaintiff's missed hours because he would have to go to headquarters and seek approval from upper management.

Plaintiff responds that there was work available because Mr. Buetel allowed a craft employee to work as an acting supervisor during the early shift.   Plaintiff alleges Mr. Buetel deliberately switched the craft employee to the morning shift so that he could say he already had a morning supervisor, thereby thwarting her return to work.   (4:19-CV-345, ECF NO. 61 at 5). There is no evidence that Mr. Beutel's decision to move the craft employee to the morning shift was deliberate to frustrate Plaintiff's return to work.   Earlier Plaintiff was on medical leave and then temporary assignment at the Maryville Gardens station.   Mr. Beutel needed to fill the morning shift.   But even if Plaintiff's morning shift had not been filled by another employee, a supervisory position would not have been available, because Plaintiff was only able to return to work for four-hour shifts.   Mr. Beutel testified the Chouteau station needed three full-time supervisors to operate.   USPS was not required to hire additional personnel or assign Plaintiff's

24

tasks to others to offset her restrictions. See Hatchett v. Philander Smith Coll., 251 F.3d 670, 675 (8th Cir. 2001).

The claims in Claim Four fail as a matter of law.   Plaintiff failed to exhaust any claim of failure to accommodate under the Rehabilitation Act.   And to the extent she is claiming disparate treatment, Plaintiff has not established an inference of discrimination.   Defendant articulated a legitimate non-discriminatory reason for its decision, and Plaintiff has not shown the reason was pretextual. Defendant is entitled to summary judgment as to Claim Four in 4:19-CV-345.

### 5.   Claim Five

In Claim Five of her first Complaint, Plaintiff alleges acting manager, Carolyn Johnson, issued Plaintiff a warning letter for failure to maintain a regular work schedule. Ms. Johnson came to the Chouteau station sometime between August and October 2013, and was Plaintiff's direct supervisor for three to four months.   On November 18, 2013, Ms. Johnson issued Plaintiff a Letter of Warning for 144 hours of unscheduled absences.

First, like many of her claims, Plaintiff does not allege the discriminatory basis upon which Claim Five is based.   Plaintiff does not explain or allege how the Letter of Warning was discriminatory or under which statute she is bringing this claim. The Court finds there is lack of a causal connection between the letter and Plaintiff's membership in a protected group. Certainly, there is no evidence of direct evidence of discrimination in the allegations of Claim Five.

Defendant argues that the warning letter does not amount to unlawful discrimination because the warning letter did not amount to an adverse employment action, and there was a legitimate non-discriminatory reason for issuing the letter. The Court agrees with Defendant's arguments.

It is undisputed USPS uses a progressive discipline process to address employee misconduct. A Letter of Warning is a step in the disciplinary process.   Plaintiff received a Letter of Warning dated November 18, 2013, regarding her attendance, but she admits it did not affect her pay, benefits, or daily work schedule.   (4:19-CV-345, ECF No. 62 at 25).   Furthermore, Plaintiff has not shown that the letter was used against her or later placed her at a material employment disadvantage.   A poor "performance evaluation [is] not an adverse employment action." Spears v. Missouri Dep't of Corr. & Hum. Res., 210 F.3d 850, 854 (8th Cir. 2000). "A poor performance rating does not in itself constitute an adverse employment action because it has no tangible effect upon the recipient's employment." Id. (citing Cossette v. Minnesota Power & Light, 188 F.3d 964, 972 (8th Cir. 1999); Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir. 1997)).   Rather, "[a]n unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." Id. (citing Enowmbitang v. Seagate Tech., Inc., 148 F.3d 970, 973–74 (8th Cir. 1998). There is no evidence the Letter of Warning impacted Plaintiff's employment at all. Plaintiff fails to establish she suffered an adverse employment action in Claim Five.   Wagner, 779 F.3d at 766.

Even if the Court were to find the November 18, 2013 Letter of Warning was an adverse employment action, Defendant has articulated a legitimate non-discriminatory reason for the letter. An employee's failure to maintain a regular work schedule is a violation of USPS's Employee and Labor Relations Manual (ELM). (Id. at 24).   USPS distinguishes between scheduled leave and unscheduled leave.   If an employee does not seek and receive advanced approval for her absence from her supervisor, the leave is unscheduled.   (Id. at 52).   An employee can use annual leave,

sick leave, or leave without pay for unscheduled leave. USPS has a "tolerance limit" for unscheduled leave, and the attendance tracking system brings unscheduled leave to the supervisor's attention. When an employee reaches that limit, the system notifies the manager with an e-mail.   (Id. at 53).   Ms. Johnson received an email alerting her that Plaintiff's had reached the "tolerance level" for the use of unscheduled leave.   (Id.)

In the Letter of Warning, Ms. Johnson cited Plaintiff for eight hours of unscheduled sick leave on July 1, July 2, July 3, July 5, August 9, August 10, August 14, August 16, August 17, October 3, October 4, October 5, and October 7, 2013; for eight hours of unscheduled annual leave in lieu of sick leave on August 30 and August 31, 2013; and eight hours of unscheduled leave without pay on October 12, October 18, and October 21, 2013.   Ms. Johnson did not cite Plaintiff's four-hour work restrictions. (Id. at 51).

Plaintiff, however, believed the dates and hours in the Letter of Warning were inaccurate because of her work restrictions. According to Plaintiff, leave hours and work hours could not be entered into the system on the same day.   (Id. at 24).   Although she believed the dates and hours in the Letter of Warning were not accurate, Plaintiff could not specify how they were inaccurate, and she did not provide Ms. Johnson with any proof that the dates and hours were wrong. Plaintiff refused to sign the Letter of Warning, but she knew her attendance was "not good" or was even "bad."   (Id. 24).

The Court finds Defendant articulated a legitimate, non-discriminatory reason for issuing the Letter of Warning.   Plaintiff disputes that the dates and hours were accurate, but she has not offered proof of the supposed inaccuracies.   Plaintiff has not met her burden to show that Defendant's proffered reason for the Letter of Warning, Plaintiff's poor attendance, was pretext

for discrimination. Plaintiff claims of discrimination and retaliation in Claim Five in Case No. 4:19-CV-345 are dismissed without merit.

### 6.    Claim Six

In Claim Six of the Complaint in Case No. 4:19-CV-345, Plaintiff alleges Ms. Johnson told Plaintiff, in the presence of co-workers, that "since I could only work 4/hr/day, 'I was of no use to her'" and that she was "sent to the station to get rid of [Plaintiff]." (4:19-CV-345, ECF No. 1 at 6).   Plaintiff further alleges that Ms. Johnson "solicited" statements from other employees "thereby defaming [her] character and contribution to a hostile environment."    (Id.)

Plaintiff testified that on an unspecified date, Ms. Johnson told Plaintiff, while they were on the workroom floor, that she was sent to the Chouteau station to get rid of Plaintiff. (4:19-CV-345, ECF No. 62 at 25).   Ms. Johnson disputes that she made this statement, and instead she asserts it was Plaintiff who told her that she believed Ms. Johnson was sent to the Chouteau station to get rid of her. (Id. at 55).   Plaintiff also testified that at some point in time, Ms. Johnson told her she was of no use to her.

For purposes of summary judgment, the Court accepts that these two statements were made, however, Plaintiff fails to establish a claim of unlawful discrimination or harassment in Claim Six.   As with most of her claims, Plaintiff does not allege or explain grounds on which Claim Six is based, and it fails to state a claim on this basis alone.

To the extent Plaintiff is alleging the two comments were directed toward her disability, the Eighth Circuit has found harassment based on disability is a cognizable claim under the Rehabilitation Act. Neudecker v. Boisclair Corp., 351 F.3d 361, 364 (8th Cir. 2003).   In order to be entitled to relief, Plaintiff must show that she is a member of the class of people protected by

28

the Rehabilitation Act, that she was subject to unwelcome harassment, "that the harassment resulted from [her] membership in the protected class, and that the harassment was severe enough to affect the terms, conditions, or privileges of his employment."   Shaver v. Indep. Stave Co., 350 F.3d 716, 720 (8th Cir. 2003).

First, it is not clear that the two comments resulted from Plaintiff's membership in a protected class, but even if this were the case, the two comments, made at some point in time, were not severe enough to affect the terms, conditions, or privileges of Plaintiff's employment.   "A hostile environment exists when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Palesch, 233 F.3d at 566 (emphasis added). See also Moses, 894 F.3d at 922 (sporadic use of abusive language and teasing were insufficient to affect the terms and conditions employment).   Ms. Johnson's statements do not rise to the level of actionable harassment. Al-Zubaidy, 406 F.3d at 1039 (statement with a tenuous connection to a protected ground that does not interfere with the employee's work falls short of an actionable claim).

As for the allegation that Ms. Johnson "solicited" defamatory statements from other employees, Plaintiff has neither explained nor offered evidentiary support for these allegations, and the Court has found none in the record. Defendant's motion for summary judgment is granted as to Plaintiff's hostile work environment claims in Claim Six.

### 7.    Claim Seven

In Claim Seven of the Complaint in 4:19-CV-345, Plaintiff alleges another manager at the Chouteau station, Mr. Huning, informed Plaintiff that she was not to report back to work until

her doctor released her to work eight hours a day. (4:19-CV-345, ECF No. 1 at 5). Plaintiff alleges other supervisors were allowed to work four hours a day when they had work restrictions that were not job-related.

As set forth above, Plaintiff did return to the Chouteau station in July 2013, and she was allowed to work four hours a day while being paid for eight hours until December 3, 2013.  (4:19-CV-345, ECF No. 62 at 26).   Plaintiff was able to keep this arrangement until December 2013. It is undisputed that on December 3, 2013, Mr. Huning told Plaintiff that based on her four-hour work restriction, there was no available work for Plaintiff.   (Id. at 61). He told Plaintiff she was to notify management when she was able to work eight hours a day.   Mr. Huning explained that a supervisor position was an eight-hour assignment, and Plaintiff's inability to work eight hours a day meant USPS had to pay another supervisor to cover the remaining four hours.  (Id.)   In response, Plaintiff took OWCP leave, for which she was paid. (Id.)

It is unclear from the Complaint and Plaintiff's memorandum in opposition to summary judgment whether Plaintiff is making a failure to accommodate claim in Claim Seven or a claim of disparate treatment. To the extent Plaintiff is asserting a claim of failure to accommodate under the Rehabilitation Act, this claim fails for failure to exhaust, as discussed above. The DRAC denied the request for an accommodation, in part, because Plaintiff failed to provide documentation regarding the expected duration of her restriction.   Plaintiff did not appeal that decision.

To the extent Plaintiff is claiming disparate treatment based on some protected class, this claim fails because Plaintiff failed to articulate the basis of the discrimination, and it is not apparent from the factual allegations under what legal authority she is bringing Claim Seven. Even if the Court were to treat Claim Seven as a disparate treatment claim under the McDonnell Douglas

burden-shifting analysis, Defendant would be entitled to summary judgment, because Defendant has established a legitimate, non-discriminatory reason for its decision.   As Mr. Huning and Mr. Beutel testified, the Chouteau station ran with three full-time supervisors.   Plaintiff was being paid as a full-time employee but was only working four-hour shifts, which meant USPS needed to pay another supervisor to cover the remaining four hours of her work.   Myers v. Hose, 50 F.3d 278, 283 (4th Cir. 1995) (an employer need not hire additional employees, give other employees more work, or give indefinite leave).

As Defendant has articulated a legitimate non-discriminatory reason for its action, the burden of production now shifts to Plaintiff, who must demonstrate that Defendant's proffered reason was mere pretext for intentional discrimination, which she fails to do.   McDonnell Douglas, 411 U.S. at 802–05; Edwards, 860 F.3d at 1125–26.   Plaintiff has failed to do so.

Plaintiff attempts to establish pretext by pointing to other employees, Kim Rudd and John Kollenberg, who she contends were similarly situated and were allowed to work four-hour shifts for eight-hour pay.   Ms. Rudd and Mr. Kollenberg, however, are not similarly situated.   They were supervisors at a different station and worked for different supervisors.   "To prove discrimination based on similarly-situated persons . . . . 'the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.'"   Hervey v. Cty. of Koochiching, 527 F.3d 711, 720 (8th Cir. 2008) (quoting Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000)).   Furthermore, there is no evidence in the record as to their duties and responsibilities or their disability status.   The Court cannot evaluate whether these two employees were similarly situated to Plaintiff.   But perhaps most importantly, Plaintiff has no admissible evidence that these

two employees worked four hours and were paid eight.   Plaintiff speculates this was the case based on third party hearsay evidence.

In sum, any claim of failure to accommodate under the Rehabilitation Act fails for failure to exhaust.   To the extent Plaintiff is asserting a disparate treatment claim, the Court finds Defendant articulated a legitimate, non-discriminatory reason for telling Plaintiff she could no longer work four hours for eight-hours pay.   Plaintiff has not met her burden to show that Defendant's proffered reason was pretext for discrimination. Claim Seven is without merit. Defendant is entitled to summary judgment as a matter of law for Claim Seven and all the claims in Case No. 4:19-CV-345.

### B.      Claims in Case No. 4:19-CV-1315

The claims in Case No. 4:19-CV-1315 relate to the time Plaintiff worked at the Gaffney station.   Plaintiff began working at the Gaffney station in August 2015.   At the time, she was cleared to work eight hours a day. Carla Clary was Plaintiff's supervisor at the Gaffney station. It is clear from the record, that there was animosity between Plaintiff and Ms. Clary from the beginning.   All the allegations in Plaintiff's second Complaint appear to be directed to Ms. Clary's conduct.

#### 1.      Claim One

In Claim One of the Complaint in Case No. 4:19-CV-1315, Plaintiff alleges Ms. Clary retaliated against her because of Plaintiff's prior EEOC activity, which Plaintiff alleges Ms. Clary admitted to knowing about in a signed affidavit.    Plaintiff points to what appears to be an affidavit signed by Ms. Clary dated August 8, 2016, in which Ms. Clary was asked whether she was "aware of the Complainant being involved in EEO activity," and if so, "when did you become aware" and

"how?"   (4:19-CV-345, ECF No. 53, Ex. 59 at 3).   Ms. Clary responded, "Yes, in September 2015" and "Employee's [sic] throughout the postal service." (Id.).

Even if Plaintiff has evidence Ms. Clary knew about her prior EEO activity as early as September 2015, Plaintiff fails to allege in Claim One of her Complaint how she was retaliated against. Plaintiff has not set forth the necessary elements to state a claim of retaliation.   Merely stating Ms. Clary retaliated against her without alleging or providing any facts is not enough, and the Court dismisses Claim One of the Complaint in Case No. 4:19-CV-1315 for failure to state a claim.

### 2.     Claim Two

In Claim Two of the Complaint in Case No. 4:19-CV-1315, Plaintiff alleges Ms. Clary made statements to her superiors and employees that Plaintiff was "dumped on her," and that she did not want Plaintiff at her station. She also sent emails to her superiors that Plaintiff was "their problem."   (4:19-CV-1315, ECF No. 1 at 5).

It is undisputed that on November 25, 2015, there was a meeting with Ms. Clary, Plaintiff, and Plaintiff's union representative, Richard Green. At the end of the meeting, Ms. Clary told Plaintiff she did not want her at the Gaffney station, and she was going to do what she needed to get her out.   (4:19-CV-345, ECF No. 62 at 66).   Ms. Clary told Mr. Green she was not happy to have Plaintiff at Gaffney, because Plaintiff was placed at the station without her involvement in the selection process. (Id. 66, 89).   It is undisputed that normally bids would have been submitted for an opening, Ms. Clary would have interviewed potential supervisors, and she would have had a say in the final hiring decision.   Ms. Clary did not have any input in the decision to place Plaintiff at the Gaffney station.   (Id.)

Plaintiff described Ms. Clary's statement as "hurtful" and a "threat," however, she admitted that Ms. Clary did not make any derogatory comments about Plaintiff's race, color, sex, age, or EEO activity during this meeting. (Id. at 67). Plaintiff could not remember if Ms. Clary said anything derogatory about her disability.   (Id.)   Plaintiff testified that Clary "just didn't like me . . . [and] just didn't want me there." (Id.)

As with many of the claims in the two complaints, it is not evident what type of discrimination Plaintiff is alleging in Claim Two, or under what statutory authority she is bringing the claim.   The comment does not relate to Plaintiff's disability, age, or prior EEO activity, the boxes she checked on page 5 of her Complaint.   (4:19-CV-1315, ECF No. 1 at 5).   The Court finds there is lack of a causal connection between the comment and Plaintiff's membership in a protected group, and the claim is dismissed on these grounds.   Palesch, 233 F.3d at 567–68 (finding plaintiff failed to establish the required connection between the mistreatment she endured to discriminatory animus based on a protected class).

That said, even if the comment did relate to Plaintiff's disability, age, or prior EEO activity, Ms. Clary's comment does not rise to the level of actionable harassment.   Moses, 894 F.3d at 922; Al-Zubaidy, 406 F.3d at 1038.   The Court does not disagree that Ms. Clary's comment would be hurtful and intimidating, but it is not actionable as a harassment claim.   The comment was not severe enough to affect the terms, conditions, or privileges of Plaintiff's employment. Id. at 923. Cross, 615 F.3d at 981 ("The standard for demonstrating a hostile work environment . . .   is a demanding one. Title VII does not prohibit all verbal or physical harassment and [it] is not a general civility code for the American workplace.") (quotations and citations

omitted).   Plaintiff's claim of harassment in Claim Two in Case No. 4:19-CV-1315 is dismissed without merit.

### 3.      Claim Three

In Claim Three of the Complaint in Case No. 4:19-CV-1315, Plaintiff alleges Ms. Clary violated the ADA when she instructed Plaintiff not to take breaks, although Plaintiff's "medical work restrictions" required a 10–15-minute break.    (4:19-CV-1315, ECF No. 1 at 6).

First and foremost, the ADA is not appliable to claims brought by employees against USPS, and the Court dismisses the claim on this ground. Carroll v. Potter, 163 F. App'x 450 (8th Cir. 2006) (citing Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6, 11 n.1 (1st Cir. 2004) (as a federal employee, plaintiff could not file suit under the ADA to redress alleged discrimination).

Furthermore, even if the Court were to construe Claim Three as a claim under the Rehabilitation Act, the claim is without merit because there is no evidence in the record that Plaintiff exhausted the claim, which forecloses the right to a decision on the merits.    Morgan, 798 F.2d at 1165 (exhaustion of administrative remedies is required for claims of disability discrimination in employment against the federal government); McAlister, 900 F.2d at 158 (same). It is undisputed that Plaintiff did not file an EEO complaint with regard to the denial of 10-15-minute breaks due to her medical condition.[6]   There are no allegations in her EEO charges such

---

[6]Plaintiff did allege in EEO 0048-16 that on December 29, 2015, Ms. Clary told her not to go to lunch until after Ms. Clary returned to the station.   Plaintiff claimed she waited six hours and then left on a break to get food from a fast-food restaurant.   When Plaintiff returned, Ms. Clary was back at the station, and she yelled at Plaintiff for leaving the facility without her permission.  (4:19-CV-345, ECF No. 53, Ex. 27 at 17-18).   Being denied lunch or a break on a specific date is not the same as the allegation that Ms. Clary instructed Plaintiff not to take breaks, when Plaintiff's medical condition required them.

that USPS had reasonable notice that Plaintiff was claiming an unlawful denial of a reasonable accommodation or disability discrimination based on the failure to receive 10–15-minute breaks. Defendant is entitled to summary judgment as to Claim Three.

### 4.      Claim Four

In Claim Four of the Complaint in Case No. 4:19-CV-1315, Plaintiff alleges Ms. Clary "was constantly harassing me – creating a hostile environment on a daily basis in which she threatened to do whatever she needed to do to get me out of her station – which resulted in her abusing her management position to falsify, manipulate and create circumstances to charge [plaintiff with] something."   (4:19-CV-1315, ECF No. 1 at 6).

First, it is not clear what type of harassment Plaintiff is alleging in Claim Four or under what statutory authority she is bringing the claim.   Plaintiff alleges generic harassment and a hostile environment, and there is nothing to indicate whether the alleged harassment was related Plaintiff's disability, age, or prior EEO activity, the boxes Plaintiff checked on page 5 of her Complaint.   (4:19-CV-1315, ECF No. 1 at 5).

In her memorandum opposing summary judgment, Plaintiff provided no further clarification as to the basis of the harassment Plaintiff is claiming in Claim Four.   Plaintiff wrote, "When managers don't want someone in their station, they do what Clary did – complain about everything you do. Always trying to write you up for something because they have got to have documentation.   They can't just say they don't want you there."   (4:19-CV-345, ECF No. 61 at 9).   Plaintiff further states that Ms. Clary abused her authority and when Plaintiff asked her why she continually changed her schedule, Ms. Clary stated, "Because I can."   Id.

It is clear from the record that there was bitterness between Plaintiff and Ms. Clary. The two women did not get along from the beginning.   Even viewing the facts in a light most favorable to Plaintiff, Plaintiff has not shown that Ms. Clary's animus was based on the fact Plaintiff was a member of a protected class.   The two women did not work well together, and there were often conflicts.   According to Plaintiff's version of the facts, Ms. Clary was vindictive, petty, and she took every opportunity she could to berate Plaintiff or write her up.   But being a mean or difficult boss is not against the law.   Unlawful harassment must be connected to the plaintiff's status in a protected class, and the harassment must be severe and pervasive.   Plaintiff has demonstrated neither in Claim Four.   See O'Brien v. Dep't of Agric., 532 F.3d 805, 810 (8th Cir. 2008) (after protected activity, supervisor subjected plaintiffs to heightened scrutiny, reduced some of their authority, did not allow one to attend training, did not allow one to work from home, denied one a performance award, discussed suspending them, and attempted to institute disciplinary action against them, in addition to interfering with their work, isolating, embarrassing and ostracizing them; the Court of Appeals held that district court properly granted summary judgment to the defendants because the plaintiffs' working conditions were not so severe or pervasive that they rose to the level of a hostile work environment).

As for the allegation that Ms. Clary abused her authority, Plaintiff states in her memorandum opposing summary judgment that Ms. Clary "abused her authority in using an invalid Form 1260 to discredit and charge me with disciple – stating that I self-certified my time, when there is no such thing because no one can certify their own time.  Also, it was invalid

because it had two dates on it.   Yet she cited it as an infraction anyway."   (4:19-CV-345, ECF No. 61 at 9).

The Court has reviewed the Statement of Uncontroverted Material Facts and Plaintiff's responses thereto looking for facts regarding Form 1260s.   It is undisputed that Form 1260s are used to record time if the time clock is not working.   (4:19-CV-345, ECF No. 62 at 81).   Plaintiff had a timecard but chose not to use it to clock-in and out and, as a result she was frequently using the Form 1260 to record her time.   (Id. at 99).   Plaintiff completed a Form 1260 for December 27, 2015, which reflected her arrival at 6:00 a.m., and departure at 3:00 p.m.   (Id.)   However, it is undisputed that the clerk working at the station that day indicated that Plaintiff did not begin her shift until 6:53 a.m., and she left at 2:57 p.m.   (Id. at 100).

It is undisputed that on January 25, 2016, Ms. Clary issued Plaintiff a Letter of Warning in lieu of 14-day suspension. (Id. at 94).   The Form 1260 dated December 27, 2015, was cited, among other things, as the basis for the Letter of Warning.[7]   (Id. at 76-77, 94).   Plaintiff appealed the Letter of Warning, and she had a meeting with Karla Rose and Mr. Green.   Ms. Rose sustained the Letter of Warning, concluding Ms. Clary's findings were supported by the evidence. (Id. at 106).

---

[7]The January 25, 2016 Letter of Warning cited many other infractions, such as failing to fill out Form 3971 in advance of scheduled appointments, failing to complete CSAD and CSDRS, and failing to give a service talk.   Defendant devoted significant pages of its statement of uncontroverted material fact and memoranda in support of summary judgment discussing these and other events.   Plaintiff, however, makes no allegations regarding these events in her two Complaints, and she does not address them in her memorandum in opposition to Defendant's Motion for Summary Judgment.   The Court finds claims based on these events are not at issue in this case.

Plaintiff has not shown that she was subject to unlawful discrimination based on the January 26, 2016 Letter of Warning.   As with the prior Letter of Warning, there is nothing in the record to suggest Plaintiff suffered an adverse employment action.   In other words, the Letter of Warning did not affect her pay or terms or conditions of employment.   Furthermore, Defendant has articulated a legitimate non-discriminatory reason for the Letter of Warning.   Defendant is entitled to summary judgment as to Claim Four.

### 5.      Claim Five

In Claim Five of the Complaint in Case No. 4:19-CV-1315, Plaintiff alleges Ms. Clary treated Plaintiff differently from co-workers in that they were able to take breaks, and Plaintiff had to clock in and out; she also changed Plaintiff's "nonscheduled day" to accommodate others. (ECF No. 1 at 6).

First, it is not clear what type of discrimination Plaintiff is alleging in Claim Five or under what statutory authority she is bringing the claim.   The alleged conduct does not relate to Plaintiff's disability, age, or prior EEO activity, the boxes she checked on page 5 of her Complaint. (4:19-CV-1315, ECF No. 1 at 5).   The Court finds there is lack of a causal connection between the conduct alleged and Plaintiff's membership in a protected group.

Second, Plaintiff failed to exhaust her administrative remedies with regard to this claim. Failure to exhaust administrative remedies forecloses the right to a decision on the merits. McAlister, 900 F.2d at 158.   There is nothing in the EEO charges about being treated differently in that co-workers were able to take breaks, did not need to clock in or out, and her non-scheduled days being changed to accommodate others. "Federal employees asserting [discrimination] claims must exhaust their administrative remedies as a precondition to filing a civil action in federal

district court." McAdams v. Reno, 64 F.3d 1137, 1141 (8th Cir. 1995) (citing Brown v. General Services Admin., 425 U.S. 820, 835 (1976)). Failure to exhaust administrative remedies bars a plaintiff from raising the discrimination claims in federal court. Brown, 425 U.S. at 832; Briley v. Carlin, 172 F.3d 567, 571 (8th Cir. 1999). From the record it appears Plaintiff filed her EEO complaints pro se, therefore the Court construes them liberally. Nevertheless, "there is a difference between liberally reading a claim which 'lacks specificity,' ... and inventing ... a claim which simply was not made." Shannon v. Ford Motor Co., 72 F.3d 678, 685 (8th Cir. 1996).   Having carefully reviewed plaintiff's EEO complaint, the Court finds that plaintiff did not include information in her EEO complaints about being treated differently from co-workers, who were able to take breaks, and did not need to clock in or out.   Plaintiff also did not allege in her EEO complaints that her non-scheduled days were changed to accommodate others.

Third, it is not clear from the Complaint or Plaintiff's memorandum in opposition to summary judgment who the co-workers were.   In moving for summary judgment on this claim, Defendant points to the fact that during her deposition, Plaintiff named Sylvester Jones and Allison Holbrook as co-supervisors who were engaged in similar misconduct but were not disciplined like Plaintiff.   (4:19-CV-345, ECF No. 62 at 83). It is unclear if these are the supervisors Plaintiff contends received breaks and did not need to clock in and out.   If indeed they are, these two supervisors are not comparable to Plaintiff.   Plaintiff was an EAS supervisor, who went through a competitive hiring process. Mr. Jones and Ms. Holbrook were 204B supervisors, which is a designation used to describe a bargaining unit employee, who is temporarily assigned as a supervisor.   Mr. Jones and Ms. Holbrook are not similarly situated because they did not have the same position as Plaintiff. Riser v. Target Corp., 458 F.3d 817, 822 (8th Cir. 2006) (coworker with

different duties and positions are not similarly situated).    Moreover, Plaintiff has presented no evidence that Mr. Jones and Ms. Holbrook were outside her protected class.    All three supervisors were over 40. Ms. Holbrook was 64 and Mr. Jones was in his forties. And there is no evidence in record regarding Mr. Jones's and Ms. Holbrook's EEO activities or disability status. "To create an inference of discrimination based upon disparate treatment, the plaintiff must show she was treated differently than similarly situated persons who are <u>not</u> members of the protected class." <u>Faulkner v. Douglas Cnty., Neb.</u>, 906 F.3d 728, 732 (8th Cir. 2018) (emphasis added) (citing <u>Bennett v. Nucor Corp.</u>, 656 F.3d 802, 819 (8th Cir. 2011)).    Plaintiff has not done so here.

Finally, if the Court were to find the claim was exhausted and Plaintiff was treated differently based on her status in a protected class, the allegations in Claim Five do not rise to the level of an adverse employment action. "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." <u>Buboltz Residential Advantages, Inc.</u>, 523 F.3d 864, 868 (8th Cir. 2008), <u>abrogated on other grounds by</u> <u>Torgerson v. City of Rochester</u>, 643 F.3d 1031 (8th Cir. 2011).   Examples include "[t]ermination, cuts in pay or benefits, and changes that affect an employee's future career prospects." <u>Id.</u> Merely being unhappy with employment changes is not enough to constitute an adverse employment action. <u>Id.</u> Thus, "job reassignment involving no corresponding reduction in salary, benefits, or prestige" or "minor changes in duties or working conditions, even ... unwelcome ones" are insufficient for a claim of employment discrimination. <u>Id.</u>    Defendant is entitled to summary judgment as to Claim Five of the second Complaint.

### 6.    Claim Six

In Claim Six of the Complaint in Case No. 4:19-CV-1315, Plaintiff alleges that her manager referred to Plaintiff as "crazy ass."   It is undisputed that Ms. Clary made this statement to Plaintiff during a meeting in Ms. Clary's office.   It is also undisputed that Ms. Clary made this comment after Plaintiff got up, walked behind Ms. Clary's desk, picked up her mug, sniffed her tea, put the mug back down, and told Ms. Clary that she "just wanted to see what you were drinking." (4:19-CV-345, ECF No. 62 at 92).   Plaintiff described the comment as "hateful" and "embarrassing." (Id.)

As discussed above, hostile work environment claims require a high evidentiary showing. Plaintiff must show her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris, 510 U.S. at 21; see also Nitsche, 446 F.3d at 846 (plaintiff must "clear a high threshold to demonstrate actionable harm"); Powell, 445 F.3d at 1078 (discrimination laws do not provide a federal cause of action for every slight").   In the Court's view, the comment at issue appears to be a spontaneous response to Plaintiff's unexpected behavior.   But even if the Court were to find Ms. Clary made the comment with malice and/or was referencing Plaintiff's mental disability, one comment is not "'sufficiently severe or pervasive' to alter the conditions of Plaintiff's employment and 'create an abusive working environment.'"   Harris, 510 U.S. at 21 (quoting Meritor Sav. Bank, FSB, 477 U.S. at 67). Plaintiff fails to establish a claim of harassment, and Defendant is entitled to summary judgment as to Claim Six.

7.      **Claim Seven**

In Claim Seven of the Complaint in Case No. 4:19-CV-1315, Plaintiff alleges her manager yelled at her on the workroom floor, and "she began to further abuse her authority and brought false charges against me."  (4:19-CV-1315, ECF No. 1 at 6).   There is evidence that on an unspecified date, Ms. Clary started yelling the following at Plaintiff while they were on the workroom floor: "Get off the floor, get away from me and leave the workroom now."   (4:19-CV-345, ECF No. 62 at 71).   Ms. Clary then told Plaintiff to leave the building.   The Court assumes this is true for purposes of summary judgment. There is no evidence in the record, however, that Ms. Clary said anything derogatory regarding Plaintiff's being in a protected class. Furthermore, after the incident, Plaintiff called Ms. Rose, who told Plaintiff to leave for the day, and she would be paid, which she was.

These facts do not rise to the level of actionable harassment.   Even viewing the facts in a light most favorable to Plaintiff, Plaintiff has not shown that Ms. Clary's animus was based on the fact Plaintiff was a member of a protected class. There is nothing in the record to give rise to an inference of discriminatory motive or a causal connection between the yelling and Plaintiff's membership in a protected class.   Furthermore, yelling or being mean does not amount to actionable harassment.  Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1159 (8th Cir. 1999), abrogated on other grounds by Torgerson, 643 F.3d at 1031.

As for Plaintiff's allegation in her Claim Seven that Ms. Clary abused her authority and brought false charges against her, Plaintiff neither explains what these false charges were nor points to evidence to support these allegations.   It is Plaintiff's responsibility to show there are genuine issues of material fact in the record that preclude the summary judgment, and she has not

done so here. <u>Satcher</u>, 558 F.3d at 734 (citing <u>Anderson</u>, 477 U.S. at 256)). It is not the Court's role to sift through the record looking for a claim or facts to support Plaintiff's claim. <u>Id.</u> (not a district court's responsibility "to sift through the record to see if, perhaps, there was an issue of fact"); <u>see also</u> <u>Rodgers v. City of Des Moines</u>, 435 F.3d 904, 908 (8th Cir. 2006) ("Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments.").   The Court finds Defendant is entitled to summary judgment as to Claim Seven of the Complaint.

### 8.    Hostile Working Environment Claims in Case No. 4:19-CV-1315

Evaluating Ms. Clary's conduct all together, from Claims One though Seven, the Court does not find Plaintiff has established she was subject to a hostile working environment that is actionable under federal anti-discrimination laws. Over a period of approximately six months, there is evidence Ms. Clary yelled at Plaintiff; told Plaintiff she was a "crazy ass"; informed Plaintiff she did not want her at her station; subjected Plaintiff to increased scrutiny, including issuing her a Letter of Warning; made her clock in and out, when others did not; and often rearranged her schedule.   Plaintiff felt unwelcome at the Gaffney station and was frustrated by Ms. Clary's conduct, however, taken as a whole, the evidence does not establish Plaintiff was subject to unlawful harassment. Ms. Clary's conduct does not meet the high threshold for a hostile work environment claim. <u>See</u> <u>O'Brien</u>, 532 F.3d at 810 (supervisor subjected plaintiffs to heightened scrutiny, reduced some of their authority, did not allow one to attend training, did not allow one to work from home, denied one a performance award, discussed suspending them, and attempted to institute disciplinary action against them, in addition to interfering with their work, isolating, embarrassing and ostracizing them); <u>Devin v. Schwan's Home Serv., Inc.</u>, 491 F.3d 778,

788 (8th Cir. 2007), <u>abrogated on other grounds by</u> <u>Torgerson</u>, 643 F.3d at 1031 (finding allegations "amount[ed] to a frustrating work environment rather than an objectively hostile work environment"); <u>Bradley v. Widnall</u>, 232 F.3d 626 (8th Cir. 2000), <u>abrogated on other grounds by</u> <u>Torgerson</u>, 643 F.3d at 1031 (an employer's conduct was not so severe or pervasive to have affected a term or condition of employment despite the employee's "frustrating work situation" characterized by her being: excluded from the decision-making process, treated with disrespect, subjected to false complaints, and curtailed in her supervisory duties); <u>Breeding</u>, 164 F.3d at 1159 (concluding that unfair criticism and being yelled at did not amount to actionable harassment). Defendant is entitled to summary judgment as to all of the claims in Case No. 4:19-CV-1315.

## V.   Conclusion

For the reasons stated above, the Court finds Defendant has established it is entitled to summary judgment as to all the claims against it in Case Nos. 4:19-CV-345 and 4:19-CV-1315. Plaintiff failed to raise a genuine dispute as to any material fact, and USPS is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Louis DeJoy's Motion for Summary Judgment is **GRANTED.**   (4:19-CV-345, ECF No. 52)

**IT IS FURTHER ORDERED** that Plaintiff Velma M. Hill's Motion to Correct the Record is **DENIED.**   (4:19-CV-345, ECF No. 73; 4:19-CV-1315, ECF No. 48)

An appropriate Judgment will accompany this Memorandum and Order.


_Ronnie L. White_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**


Dated this  30th   day of September, 2021.